FIRST DIVISION
March 28, 2011

No. 1-10-2833

| | |
|---|---|
| *In re* | ) Appeal from the |
| | ) Circuit Court of |
| VICENTE G., REYNA G. and | ) Cook County. |
| AMERICA G., | ) |
| | ) |
|     Minors-Respondents-Appellants | ) No. 05 JA 1253-55 |
| | ) |
| | ) |
| (The People of the State of | ) |
| Illinois and The Department of | ) |
| Children and Family Services, | ) |
| | ) |
|     Petitioners-Appellees, | ) |
| | ) Honorable |
|     v. | ) Maxwell Griffin, Jr., |
| | ) |
| Sandra R. | ) Judge Presiding. |
| | ) |
|     Respondent). | ) |

PRESIDING JUSTICE HALL delivered the judgment of the court, with opinion.

Justices Lampkin and Rochford concurred in the judgment and opinion.

## OPINION

The minor respondents, Vicente G., Reyna G. and America G., appeal from an order of the circuit court of Cook County granting the motion of the petitioner, the Illinois Department of Children and Family Services (DCFS), to terminate DCFS's guardianship of the minors. The court's order also terminated wardship and closed the minors' cases. On appeal, the minors contend that the court erred when it granted DCFS's motion without making written findings that the termination of guardianship was in the best

interest of the minors.  The minors further contend that DCFS's procedural rule was not a valid basis for termination of its guardianship.

PROCEDURAL BACKGROUND

There is no dispute as to the relevant facts of this case. On December 7, 2005, DCFS took protective custody of 14-month-old Vicente, 2-year-old Reyna and 5-year-old America, based on allegations that the minors' father, Vicente G., Sr. (Vicente, Sr.), had fondled America's vagina.  Following a hearing on April 5, 2006, the court found the evidence insufficient to establish sexual abuse but sufficient to establish neglect based on evidence that they were living in an injurious environment. Following a dispositional hearing, the court found that it was in the best interest of the minors that they be adjudged wards of the court and appointed D. Jean Ortega-Pion, DCFS's guardianship administrator, as the minors' guardian with the right to place them.  The court further found that Sandra and Vicente, Sr.,[1] the minors' parents, were unable to care for, protect, train or discipline the minors and that it was in the minors' best interest to remove them from the parents' custody.

In the subsequent months, Sandra attended parenting classes and otherwise complied with DCFS's service plan.  On January 17, 2007, following a hearing, the court granted Sandra's motion for unsupervised day visits with the minors.  On July 31, 2007, the

---

[1]Vicente, Sr. did not appear in these proceedings.

court granted Sandra's motion for unsupervised overnight visitation. At the hearing on the motion, Ms. Reyes, the caseworker, testified that Sandra was still in need of family counseling. Reyna and Vicente did not have special needs, but America needed individual counseling. Ms. Reyes did agree that it was in the best interest of the minors that they have unsupervised overnights visits with Sandra. In granting Sandra's motion, the court ordered that a child endangerment risk assessment protocol (CERAP) be performed prior to the first overnight visit.

On October 19, 2007, a permanency planning hearing was conducted; Sandra was not present. Ms. Reyes testified that Reyna had told her that Vicente, Sr., was present in Sandra's residence. Ms. Reyes made several visits to Sandra's residence but found no evidence of his return. According to Sandra, Vicente, Sr., had returned to Mexico. Subsequently, Ms. Reyes discovered that Sandra had given birth to another child on September 8, 2007. The baby and its father (not Vicente, Sr.) did not live with Sandra, but the father was present when the minors visited Sandra. The overnight visits were suspended, but weekend visitation continued.

While Ms. Reyes reported that the minors were still doing well, the court expressed concern that some of the minors' evaluations were still lacking and that America was still waiting for therapy. The court was also concerned about the implications

3

from Sandra's unreported pregnancy and the regular presence of the new baby's father in her residence. The court ordered the minors' cases to be returned to court each month until it was satisfied that progress was being made. The case was continued to November 19, 2007, for a permanency hearing and to set a goal for the minors' placement.

In November 2007, following a visit, Sandra and the minors disappeared. The court issued child protection warrants. In subsequent proceedings, Sandra was held in indirect civil contempt of court, and a bench warrant was issued for her arrest. DCFS continued its efforts to locate the minors and Sandra.

On January 8, 2009, a permanency planning hearing was held. The court entered a goal of a return home in 12 months. The court found that DCFS had made reasonable efforts to locate the family and deferred any finding regarding the minors' placement. The court further found that neither Sandra nor Vicente, Sr., had made substantial progress toward return of the minors to them. Following a number of status hearings, DCFS filed a motion to discharge its guardianship of the minors.

On August 20, 2010, the court heard arguments on DCFS's motion to terminate guardianship. On behalf of the minors, the public guardian argued that the guardianships should not be terminated. She pointed out that, if the guardianships were terminated, the child protection warrants and any other orders entered for the minors' protection and safety would end.

4

No. 1-10-2833

Moreover, if DCFS was no longer their guardian, then the minors' custody would revert to Sandra, even though there had been no hearing to determine her fitness to have the minors returned to her. The public guardian further argued that, in order to close the case, the court must make written findings that the closing was in the best interest of the minors. Finally, the public guardian argued that the DCFS procedural rule, under which it could terminate services and close a case if the family's whereabouts are unknown for a year, was not a valid basis for termination because the rule had never been adopted under the procedure required by statute.

DCFS responded that it had made reasonable efforts to locate the minors and Sandra. Owing to the minors' disappearance for three years, the guardianship administrator could no longer fulfill her duties as guardian. Therefore, DCFS was requesting that the guardian be discharged.

After hearing the parties' arguments, the circuit court questioned why the case had to remain open. The court reasoned that if the minors were located, the case could be reopened. As to the question of the minors' best interest, the court stated:

"So the other thing that bothers me, I guess, is the reality of in what way are we able to assess best interest? I mean, it seems like [the public guardian's] argument is we should keep the case open just in case because one, it's not a big deal to have D. Jean Ortega-Piron keep the case open

5

and continue to make calls. That's number one. And number two, if we close it, the mother wins. You know, she's found unable, a risk to her children, and we just shouldn't let her take off with the kids and defeat the court system. I mean, essentially, that's what your argument is because the reality is keeping the case open here is in no way helping these kids because I can't assess what I need to assess every six months for a permanency hearing. I can't set a goal. I can't do anything."

After hearing further argument from the parties, the court stated as follows:

"Okay. Well, at this point in time, I think the Court's going to go ahead and rule and grant the motion for DCFS and allow D. Jean Ortega-Piron to discharge her guardianship for the three minors. Having done that, the Court will also vacate their wardship as the Court does not believe that it can fulfill its duties and responsibilities given the present status that for over three years that neither the mother, nor the children can be located, and no one being able to suggest to this Court that we're any closer now than we were at any time since they went missing, and that there's any reason to believe that in the immediate near future that the children will be located."

Thereafter, the court entered an order vacating DCFS's guardianship of the three minors. The court also entered an

No. 1-10-2833

order terminating the wardship and guardianship of the minors and closing the cases.

Pursuant to Illinois Supreme Court Rule 311 (eff. Feb. 26, 2010), the minors bring this expedited appeal.

ANALYSIS

I. Compliance with the Juvenile Court Act of 1987

The minors contend that the circuit court failed to comply with section 2-31(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-31(2) (West 2008) (the Act)).

A. *Standard of Review*

Whether a court failed to follow statutory requirements presents a question of law, which we review *de novo*. *In re Aaron R.*, 387 Ill. App. 3d 1130, 902 N.E.2d 171 (2009).

B. *Discussion*

Section 2-31(2) of the Act provides in pertinent part as follows:

"Whenever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but the termination must be made in compliance with Section 2-28." 705 ILCS 405/2-31(2) (West

7

No. 1-10-2833

Section 2-28(4) of the Act provides in pertinent part as follows:

"The minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his parents or former guardian or custodian.

* * *

Custody of the minor shall not be restored to any parent, guardian or legal custodian in any case in which the minor is found to be neglected or abused under Section 2-3 or dependent under Section 2-4 of this Act, unless the minor can be cared for at home without endangering his or her health or safety and it is in the best interest of the minor, and if such neglect, abuse, or dependency is found by the court *** to have come about due to the acts or omissions or both of such parent, guardian or legal custodian, until such time as an investigation is made as provided in paragraph (5) and a hearing is held on the issue of the health, safety and best interest of the minor and the fitness of such parent, guardian or legal custodian to care for the minor and the court enters an order that such parent, guardian or legal custodian is fit to care for the minor."  750 ILCS 405/2-28(4) (West 2008).

The failure to comply with the requirements of the Act

8

renders an order discharging a case ineffectual. *Aaron R.*, 387 Ill. App. 3d at 1139. In that case, the minor was found to be neglected. Following a June 26, 2007, hearing, the court found that the State had failed to prove new allegations of neglect, returned custody of the minor to the father and closed the case. Subsequently, the court entered orders terminating wardship and DCFS's guardianship, even though DCFS had not requested that it's guardianship be terminated. DCFS appealed.

The reviewing court found that the trial court had not complied with section 2-31(2) of the Act when it ruled without considering the best interest of the minor and without making the required written findings.[2] Moreover, in returning custody to the parents, the court had not complied with section 2-28(4). The June 26, 2007, hearing concerned the State's new allegations of neglect; there was no finding that the parents were fit to care for the minor. Moreover, the court found that the evidence supported the continuation of wardship and guardianship. *Aaron R.*, 387 Ill. App. 3d at 1142.

According to the record in this case, in 2006, the court removed the minors from Sandra's custody finding the minors were neglected because of their injurious environment and Sandra's inability to protect or care for them. Subsequently, in 2007, Sandra violated the visitation order and disappeared with the

---

[2]The reviewing court found the trial court's *nunc pro tunc* order improper. *Aaron R.*, 387 Ill. App. 3d at 1140.

minors. In 2009, the court determined that Sandra had not made any reasonable progress toward the return of the minors to her custody.

Nothing in section 2-31(2) requires the court to consider only *current* information in its best interest determination. At the time the court granted DCFS's motion, Sandra had violated the court's orders relating to visitation and taken physical custody of the minors, placing the minors in the same neglectful situation they had been in at the very beginning of these proceedings. The closing of the case deprived them of the protective orders, which had been entered. Yet, rather than consider the minors' best interest, the court remained focused on the practicalities of keeping the case open in the absence of Sandra and the minors.

We hold that in terminating the guardianship and wardship and closing the minors' cases, the circuit court failed to comply with section 2-31(2) of the Act. The court failed to consider whether the termination of wardship and guardianship was in the best interest of the minors and failed to make written findings. Moreover, as the court's termination of this case resulted in the *de facto* return of the minors' custody to Sandra, section 2-31(2) required the court to comply with the requirements of section 2-28(4) of the Act. The court did not hold a hearing, order an investigation or make the necessary finding that Sandra was fit to care for the minors. See 705 ILCS 405/2-28(4) (West 2008).

10

We conclude that this case must be remanded for compliance with section 2-31(2) of the Act.

## II. DCFS Procedural Rule

We find nothing in DCFS's administrative procedure rule that permits DCFS, rather than the circuit court, to determine when guardianship, as opposed to services, may be terminated. In any event, the best interest of the minors must always prevail over DCFS's internal management rules.

## CONCLUSION

The orders vacating and terminating DCFS's guardianship of the minors, terminating the court's wardship of the minors and closing the case are vacated, and the cause is remanded for further proceedings.

Vacated and remanded with directions.